# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD C. JEFFERSON,<br>　　　　Plaintiff, | )<br>) |
| v. | )     C.A. 13-220 Erie<br>)<br>)     Magistrate Judge Baxter |
| MAXINE OVERTON, et al.,<br>　　　　Defendants. | )<br>) |

## MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter:

## I.  Introduction

### A. Relevant Procedural History

Plaintiff Leonard C. Jefferson, a prisoner formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"),[2] originally filed this *pro se* civil rights action in the Court of Common Pleas of Erie County, Pennsylvania. Defendants removed the case to this Court on July 19, 2013 [ECF No. 1], and Plaintiff filed an amended complaint. [ECF No. 9]. Named as Defendants in the operative amended complaint are Maxine Overton ("Overton"), a former Correctional Health Care Administrator at SCI-Albion; Christine Zirkle ("Zirkle"), Overton's successor as Health Care Administrator at SCI-Albion; and Jean Oakes ("Oakes"), Infection Control Nurse at SCI-Albion.

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 3, 4].

[2] Plaintiff is currently incarcerated at the State Correctional Institution at Cranston, Rhode Island [ECF No. 18].

Plaintiff's amended complaint sets forth claims pursuant to 42 U.S.C. § 1983 arising under the Eighth Amendment, the Fourteenth Amendment Equal Protection Clause, and the Americans with Disabilities Act ("ADA"). Plaintiff also alleges a pendant state law claim of medical negligence. Defendants previously filed a motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. Upon resolution of the motion, only Plaintiff's Eighth Amendment claim against each Defendant remains. [ECF No.23].

On September 8, 2014, the Court granted Plaintiff's motion for the appointment of counsel and stayed the action pending acceptance of his case by a member of the bar. On January 20, 2015, counsel entered an appearance on Plaintiff's behalf, and the action was reopened on March 6, 2015. Discovery has been completed and Defendants have filed a motion for summary judgment. [ECF No. 62]. Plaintiff filed his response through counsel [ECF Nos. 68-70], and the motion is now ripe for consideration.

### B. Relevant Factual History

The evidence adduced to date establishes that for all times relevant to this action, Plaintiff has been required to use a urethral catheter four to five times daily to empty his bladder. Since at least 2006, SCI-Albion medical staff provided Plaintiff seven catheters per week, requiring Plaintiff to reuse a catheter several times per day. Plaintiff contends that despite his adherence to DOC instructions to wash each catheter in his cell with soap and water before reusing, Plaintiff suffered at least nine urinary tract infections ("UTIs") during the two years immediately preceding the filing of his complaint, and at least 19 UTIs since arriving at SCI-Albion. Plaintiff attributes his chronic infections to reusing an issued catheter several times each day, without sterile gloves and antiseptic cleansers.

Plaintiff filed several grievances and requests for assistance challenging the required reuse of catheters and requesting antiseptic wipes and sterile gloves. (ECF No. 1-1, pp. 16-30). Plaintiff related his chronic UTI's to the lack of sterile procedures for in-cell catheterization. Plaintiff contends that despite his grievances and history of infection, each of the Defendants were deliberately indifferent to his condition and refused to authorize or supply additional catheters or sterile gloves. As an example, Plaintiff notes that on June 27, 2012, he addressed a request for assistance to Defendant Overton, in her capacity as SCI-Albion's Corrections Health Care Administrator ("CHCA"), indicating that during his recent incarceration at SCI-Somerset for shoulder surgery, he was supplied one catheter per day, two Povidone-Iodine Prep-pads[3] and two sterile gloves. Plaintiff stated his belief that the additional supplies provided a superior method of reducing the risk of infection over the Dial$^{TM}$ soap provided at SCI-Albion. Plaintiff requested that he be supplied these items each week with his catheters to reduce the risk of infection. Defendant Zirkle responded on Defendant Overton's behalf, indicating that "[s]elf-cath procedure is a clean procedure not a sterile procedure; sterile gloves are not required." (ECF No. 1-1, p. 16; ECF No. 70-3, p.5).

Upon receipt of Defendant Zirkle's response, Plaintiff submitted Grievance No. 418916, complaining that since 2005, he had suffered more than 19 urinary tract infections ("UTIs"), the most recent occurring one month earlier.[4] Plaintiff complained that medical personnel at SCI-

---

[3] https://www.medline.com/product/Povidone-Iodine-Prep-Pads/Skin-Scrub/Z05-PF07445 The treated prep-pads are indicated to act as a broad-range antimicrobial to reduce bacteria and microorganisms on the skin.

[4] As relevant to this action, Plaintiff's medical records show he was treated for UTIs on March 31, 2011, May 11, 2011, November 23, 2011, January 13, 2012, January 20, 2012, March 7, 2012, June 8, 2012, June 17, 2012 (Zirkle acknowledges that Rocephin was prescribed for this resistant infection, requiring shots for ten days, "a very uncomfortable treatment, it is painful" (ECF No. 65-1, p. 14)), July 12, 2012, September 18, 2012, October 17, 2012, December 20, 2012, April 1, 2013, April 18, 2013, May 7, 2013. After surgery, Plaintiff continued to suffer UTIs and was treated September 24, 2013, October 14, 2013, and November 4, 2013. (ECF No. 65-1, pp. 8-29).

Somerset were "appalled" to learn that SCI-Albion medical personnel did not provide him with gloves and antiseptic wipes to reduce the risk of infection. Plaintiff stated his belief that the practice constitutes deliberate indifference to his ongoing suffering and need for infection prevention, and falls below appropriate medical standards. (ECF No. 1-1, p. 17). The facility grievance coordinator reviewed Plaintiff's concerns with Defendant Overton, who contends that the procedures implemented at SCI-Albion comply with DOC policy and community health standards. (Id.; ECF No. 70-4, pp. 8-9). In addition, Defendant Overton reported that the additional procedures encountered by Plaintiff at SCI-Somerset were necessitated by the inpatient infirmary setting where Plaintiff was housed for a surgical procedure. Plaintiff appealed this response, again noting that he suffered repeated infections and that the policy, as applied to him, was not sufficient to prevent infection. (ECF No. 1-1, p. 20). Plaintiff's appeal to the Secretary's Office of Inmate Grievances & Appeals was referred to the DOC Bureau of Health Care Services.

Plaintiff submitted a second grievance, No. 437538, on November 22, 2012, and complained that despite the dispensed catheters being labeled "single use only," Plaintiff was provided only one catheter per day, and was not provided sterile gloves or sanitizing wipes to prevent infection. Plaintiff indicated he was aware that the medical department was providing a Caucasian inmate with a sufficient number of catheters to permit single use, and Plaintiff questioned the difference in treatment afforded to him, an African American. (ECF No. 1-1, p. 24). Defendant Overton received a copy of the initial review response, which denied Plaintiff's grievance. The responding officer stated that the Medical Department determined treatment on an individualized basis, that he had been appropriately instructed in catheter care, and that he

was issued anti-bacterial soap to clean his catheters between uses. (ECF No. 1-1, p. 29). Appeals of this grievance response were denied.

Defendants have attached as an exhibit to their motion the Corrections Health Care Administrator job description, as relevant to both Defendants Overton and Zirkle. Among her duties, the incumbent CHCA: "manages health care services for inmates in the treatment of illnesses, diseases, and injuries in accordance with health care standards, guidelines and directives on a 24-hour daily basis, 7-days a week, including … medical and surgical treatment;" resolves grievances; prepares requisitions for supplies; and, "acts as staff adviser on matters of health and welfare of inmates." (ECF No. 65-5, pp. 3-4). Relying on the scope of the CHCA position as exclusive of direct patient care, Defendants Overton and Zirkle indicate that all decisions related to the provision of catheters and supplies were relegated to Plaintiff's treating physician or physician assistant, and were not within their purview to change. (ECF Nos. 64, 65-4, pps.15-16, 33-34). However, both acknowledge receipt of Plaintiff's requests for assistance and grievances, and the fact that they did not intercede on Plaintiff's behalf. (ECF 65-1, pp. 6, 16-17; 65-2, p.5).

Plaintiff identifies Defendant Oakes as an SCI-Albion infection control nurse. In December 2012, Defendant Oakes conducted a catheter use and care training session for Plaintiff and other catheter-dependent inmates. Defendant Oakes acknowledges that in the course of the training session, attendees, including Plaintiff, voiced concerns regarding the link between reusing single use catheters and suffering chronic UTIs. Defendant Oakes further acknowledges that she discussed Plaintiff's repeated UTIs with him and addressed his concerns related to catheter reuse with Defendants Zirkle and Overton, and with the SCI-Albion Medical Director. (ECF Nos. 65-4, pp. 41-48). In Defendants Oakes' experience, only doctors and physician's

assistants determined and prescribed the number of catheters per inmate, and she did not participate in dispensing catheters to inmates. (ECF 65-3, p. 4).

Defendants defend the practice of reusing catheters in an institutional setting contending that while each catheter is labeled by the manufacturer as "single use," such designation is meant to prevent sharing catheters between inmates, and is not a limit on the number of uses for each catheter. (ECF No. 65-1, p. 17, 65-4, p. 32 n. 19). In addition, Defendants argue that the self-catheterization procedure is a "clean" procedure, and sterile conditions are not required. (ECF No. 65-2, p. 8). Defendants Oakes and Zirkle state that it is medically acceptable for inmates to wash catheters with soap and water, and lay them to dry on a clean cloth on cell beds or footlockers. (ECF No. 65-3, p. 9).

With regard to the alleged inadequacy of care, Plaintiff presents the report of its board certified internal medicine expert, William S. Zillweger, M.D. [ECF No. 70-1]. Dr. Zillweger states that requiring the re-use of catheters has been disfavored and recognized as a cost-containment measure "for years." Id. Upon review of Plaintiff's medical records, Dr. Zillweger further states:

> The lack of appropriate aftercare provided by SCI-Albion medical providers directly, and through their actual and/or apparent agents, potentiated physical and psychosocial complications by supplying substandard provisions to Mr. Jefferson. The catheter manufacturer recommends using their device once. Mr. Jefferson's repeated urinary tract infections places him at risk for kidney failure and chronic prostate gland infection. Mr. Jefferson's kidney function has clearly deteriorated as noted by the abnormal GFR (glomerular filtration rate). Certainly the incidence of infection(s) in this case warranted investigation by the prison medical team and a change in Mr. Jefferson's IC (intermittent catheterization) protocol to one which reduces the risk(s) of infection. The major risk of using single-use catheters over again is that patients are in contact with a device with insufficient safety and efficacy performance … it is unclear as to what physical and property changes occur by attempts at cleaning and reuse.

* * *

> It is my opinion to a reasonable degree of medical certainty, that Mr. Jefferson's repeated UTI's prompted inadequate response(s) from his prison medical team. It is further my opinion to a reasonable degree of medical certainty that his prostate gland may be chronically infected as a consequence of being constantly exposed to bacteria. The extent to which Mr. Jefferson's kidney function will be adversely affected is pure conjecture. Nonetheless, it would appear from the medical record that the medical team knowingly, with deliberate indifference, withheld appropriate catheter supplies despite the recurring UTIs that were occurring with Mr. Jefferson.

[ECF No. 70-1, pp. 2, 4].

Through the pending motion, Defendants seeks the entry of judgment in their favor, arguing that there is insufficient evidence for a jury to reasonably conclude that any of them acted with the requisite deliberate indifference to find an Eighth Amendment violation.

### C. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, quoting Fed.R.Civ.P. 56.

7

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, ... the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 381 F. App'x 211 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson, 477 U.S. at 248, 255 ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

## II. Discussion

"The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" Pearson v. Prison Health Service, 850 F.3d 526, 534 (3d Cir. 2017), quoting Helling v. McKinney, 509 U.S. 25, 32 (1993). As this Court previously noted when ruling on Defendants' motion to dismiss, in the medical context, a constitutional violation under the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 1993), citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)(internal citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.19791 quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct.13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Thus, in Pearson, the Third Circuit reiterated that "a plaintiff can only proceed to trial when there is a genuine issue of fact regarding both the adequacy of medical care and the defendant's intent." Pearson, 850 F.3d at 535, citing Durmer v. O'Carroll, 991 F.2d at 69 n. 13. This requires evidence that a defendant is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and evidence that she drew the inference. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). In the case of prison administrators, including Defendants Overton and Zirkle, unless there is "a reason to believe (or actual knowledge)" that medical personnel "are mistreating or (or not treating) a prisoner," a non-medical prison official cannot "be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference.'" Pearson at 544, quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Deliberate indifference has been found in a variety of contexts, including an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed

medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Here, Plaintiff argues that the evidence establishes that each Defendant knowingly disregarded the fact that he was suffering chronic infections as a result of reusing "single use" catheters in an institutional setting. Despite this knowledge, and despite the risk of pain and permanent injury resulting from such chronic infections, Plaintiff contends each Defendant acted with deliberate indifference in denying his reasonable requests for infection control measures such as sterile gloves, antiseptic wipes, and a sufficient number of catheters to comply with "single use" labeling.

Simply stated, the Court agrees that the record evidence is sufficient for a reasonable jury to consider the adequacy of Plaintiff's care and conclude that Defendants Overton and Zirkle acted with deliberate indifference to Plaintiff's chronic UTIs when they denied his requests for additional catheters and infection control supplies. Both were aware of his complaints of repeated infections attributed to reusing catheters in a prison setting, both had access to his medical records for review of his grievances, both understood that repeated exposure to antibiotics carried risks of resistance or illness, and yet both failed to intervene and dispense either additional catheters or sterile gloves as reasonable measures to prevent or stall infection. Further, a reasonable jury may conclude that Defendants' position with regard to single use labeling on each catheter being aimed at preventing catheter sharing between inmates suffices as evidence of the "obduracy and wantonness" that violates the Eight Amendment. See e.g. Mutschler v. SCI Albion CHCA Health Care, 445 F. App'x 617, 620 (3d Cir. 2011)(remand of dismissal of Eighth Amendment claim appropriate where plaintiff alleged Defendant Overton's

persistence in failing to prevent the repeated issuance of a latex catheter when defendant had knowledge of latex allergy and resultant pain and risk of injury).

Contrary to their contention that health care administrators cannot be found deliberately indifferent where the inmate at issue is receiving care from a doctor, the Third Circuit has held that liability is measured by knowledge of the need for medical care, which may not be accompanied by the "intentional refusal to provide that care" or by opting for "an easier and less efficacious treatment" of the inmate's condition. Palakovic v. Wetzel, 854 F.3d 209, 228 (3d Cir. 2017) (internal citations omitted). The role of Defendants Overton and Zirkle as health care administrator does not shield them from potential liability where, as here, a reasonable jury could find that both were responsible for the resolution of inmate health care grievances, and to oversee the delivery of health care to each inmate and, despite awareness of Plaintiff's ongoing infection risk and the practice of reusing catheters, each did nothing. See id., at 229, n. 24, citing, Beers-Capitol v. Whetzel, 256 F.3e 120, 135 (3d Cir. 1989) ("'to make out a claim of deliberate indifference based on direct liability,' plaintiffs must allege 'that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety.'"). Thus, the record evidence does not support the entry of summary judgment in favor of Defendants Overton and Zirkle.

To the contrary, the evidence of record does establish that Defendant Oakes is entitled to summary judgment in her favor. The evidence adduced to date demonstrates that she had no contemporaneous knowledge of Plaintiff's chronic infections, was not involved in his care, and was not a recipient of his grievances. Defendant Oakes' responses to Plaintiff's Requests for Admissions indicate that, upon learning of Plaintiff's complaints during a catheterization care class, she spoke with the Medical Director and Defendant Zirkle to address his concerns. Under

these circumstances, there is no evidence upon which a reasonable jury could find that Defendant Oakes was deliberately indifferent to Plaintiff's chronic infections and medical care and, as such, she is entitled to the entry of judgment in her favor as a matter of law.

## III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [ECF No. 62] will be denied as to Defendants Overton and Zirkle, but will be granted as to Defendant Oakes. An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: September 7, 2017